AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| STANISLAV PETROV and MILAGRO MORAGA | ) | Case No. |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | ) | 3-16-70451  SK |

**FILED**
APR - 1 2016
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ March 8, 2016 _____ in the county of _____ San Francisco _____ in the
_____ Northern _____ District of _____ California _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g) | Felon in possession of a firearm; |
| 18 U.S.C. Section 924(c) | Possession of a firearm in relation to drug trafficking; |
| 18 U.S.C. Section 922(e) | Felon in possession of a firearm after three previous convictions for serious |
| 21 U.S.C. Section 841(a)(1) and | drug offenses or violent felonies; |
| 846 | Possession with intent to distribute methamphetamine; conspiracy |

This criminal complaint is based on these facts:

Please see attached affidavit of FBI Special Agent Jenny Feng.
(Approved as to form _____ AUSA Damali Taylor)
A.M. SCOBLE

☑ Continued on the attached sheet.

_____
Complainant's signature

Jenny Feng Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 4-1-16 _____

_____
Judge's signature

City and state: _____ San Francisco, CA _____

Hon. Sallie Kim, U.S. Magistrate Judge
*Printed name and title*

1 | BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

2 | DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

3

4 | DAMALI TAYLOR (CABN 262489)
Assistant United States Attorney

5 |     450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

6 |     Telephone: (415) 436-7200
Fax: (415) 436-6753

7 |     Email: damali.taylor@usdoj.gov

8 | Attorneys for United States of America

9

**FILED**

APR – 1 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

| | |
|---|---|
| 13  IN RE: CRIMINAL COMPLAINT | )  CASE NO. 3-16-70451 SK |
| 14  FOR STANISLAV ALEXSANDROVICH PETROV AND MILAGRO DEJESUS MORAGA | )  **AFFIDAVIT OF FBI SPECIAL AGENT JENNY FENG IN SUPPORT OF COMPLAINT** |
| 15 | )  ~~FILED UNDER SEAL~~ |
| 16 | ) |
| 17 | |

18 |     I, Jenny Feng, Special Agent with the Federal Bureau of Investigation (FBI) being duly sworn,

19 | hereby depose and state as follows:

20 | **I.   BACKGROUND**

21 |   **A.  Introduction**

22 |     1. I submit this affidavit in support of a criminal complaint and arrest warrants for Stanislav

23 | Alexsandrovich PETROV and Milagro Dejesus MORAGA. There is probable cause that PETROV (a

24 | repeated convicted felon) and MORAGA, possessed a firearm and methamphetamine for use and

25 | distribution.

26 |   **B.  Agent qualifications**

27 |     2.     I am a Special Agent with the FBI and have been so employed since January 2015. I

28 | successfully completed 20 weeks of New Agent Training at the FBI Academy in Quantico, Virginia in

1   June 2015. During that time, I received training in physical surveillance, legal statutes and procedures,

2   financial investigations, money laundering techniques, asset identification, forfeiture and seizure,

3   confidential source management, and electronic surveillance techniques, including Title III monitoring.

4   Prior to becoming a Special Agent, I was employed by the FBI in April 2005 as an Investigative

5   Specialist for approximately seven years and a police officer for approximately three years.

6        3.     I am currently assigned to the San Francisco Field Office investigating organized crime.

7   As part of these and other investigations, I have been involved in analyzing, collecting, and reviewing

8   social media content and criminal histories, and I have participated in several interviews, surveillances,

9   and execution of search and arrest warrants.

10        4.     I am an investigative or law enforcement officer of the United States, within the meaning

11   of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of and to make arrests for

12   offenses enumerated in 18 U.S.C. § 2516. My duties are to investigate violations of federal law,

13   including crimes involving the sale and distribution of narcotic substances. I have thoroughly discussed

14   the current investigation with several senior FBI agents who have conducted numerous organized crime

15   and drug investigations.

16   **C. PETROV and MORAGA**

17        5.     **Stanislav Alexsandrovich PETROV (hereafter PETROV)** is a 29 year old legal

18   permanent resident of the United States resides in San Francisco, California. PETROV is currently on

19   probation issued in Santa Clara County for possession for sale of a controlled substance. As

20   demonstrated herein, there is probably cause to believe that on March 8, 2016, PETROV was illegally in

21   possession of a firearm and possession for sale of methamphetamine.

22        6.     Criminal history: PETROV is a convicted felon and career criminal. In his lifetime thus

23   far, he has been charged with 43 felonies and 25 misdemeanors, of those, he was convicted of 5 felonies

24   and 3 misdemeanors.  A criminal records check shows that he is associated with the Norteno gang. He

25   has had twelve failures to appear for vehicle violations. PETROV has a pattern of disregard for the law.

26   On November 12, 2015, PETROV was arrested by Alameda County Sheriff's Department.  Officers

27   were approaching PETROV sitting in a stolen Mercedes Benz vehicle when he rammed the officers'

28   vehicles, drove up to 110 miles per hour to evade officers with wanton disregard for public safety, and



1   resisting arrest. A stolen loaded firearm was seized from the stolen vehicle PETROV was driving and

2   13.4 grams of methamphetamine was seized from PETROV's sock. The following is a list of his

3   convictions:

4            a.      June 12, 2006, PETROV was arrested in San Francisco, California for driving

5   without a license. He was convicted of this misdemeanor and sentenced to five days in jail. He was also

6   charged for transporting methamphetamine for sale; convicted for this felony and sentenced to ninety

7   days in jail, three years probation, and fined.

8            b.      December 16, 2006, PETROV was arrested in San Francisco, California for

9   receiving stolen property. He was convicted of this misdemeanor and sentenced to six days in jail.

10           c.      March 12, 2007, PETROV was arrested in San Mateo, California for felony

11  reckless evading of a peace officer on two counts. He was convicted of the felony on both counts. For

12  one count, he was sentenced to eight months in jail, three years probation, and fined. On the second

13  count, he was sentenced to four months in jail, three years probation, and fined.

14           d.      May 20, 2010, PETROV was arrested in San Francisco, California for

15  transporting methamphetamine for sale. He was convicted for this felony and sentenced to three years in

16  prison.

17           e.      July 28, 2014, PETROV was arrested in Palo Alto, California for possession for

18  sale of narcotics (a felony) and possession of methamphetamine (a misdemeanor). He was convicted on

19  both charges and sentenced to 364 days in jail, three years probation, and fined.

20       7.      PETROV's continuous disregard for the law and public safety makes him a danger to

21  officers and bystanders. On March 10, 2016, two days after his most recent arrest and a day after he was

22  released, he was accused of beating his ex-girlfriend while she was holding her one year old baby at 23

23  Teddy Avenue. On March 13, 2016, PETROV, driving his BMW, evaded a police officer during a

24  traffic stop. Both incidents were documented in San Francisco Police Department (SFPD) incident

25  reports.

26       8.      **Milagro Dejesus MORAGA (hereafter MORAGA)** is a 24 year old United States

27  citizen believed to reside in San Francisco, California. On March 8, 2016, MORAGA was illegally in

28  possession of a firearm and possession for sale of a controlled substance. MORAGA has a restraining

1   order against her which prohibits her from possessing a firearm.

2           9.      Criminal history: MORAGA has been known to associate with Norteno gang members,

3   to include being detained in a stolen vehicle with a known Norteno gang member. She is currently on

4   probation issued in South San Francisco for possession of a stolen vehicle. She has been charged with 20

5   felonies and 13 misdemeanors, of those, she was convicted of the following 2 misdemeanors:

6           a.      May 26, 2012, MORAGA was arrested in Concord, California for unlawful

7   possession of drug paraphernalia. She was convicted and sentenced to 60 days in jail, two years

8   probation, and fined.

9           b.      October 24, 2014, MORAGA was arrested in San Francisco, California for

10   possession of a stolen vehicle. She was convicted and sentenced to 30 days in jail and three years

11   probation.

12   **D. Statutes Violated**

13           10.     **Title 18, United States Code, Section 922(g)(1)(3) provides:**

14   "It shall be unlawful for any person who has been convicted in any court of, (1) a crime

15   punishable by imprisonment for a term exceeding one year; (3) who is an unlawful user of or addicted to

16   any controlled substance, to ship or transport in interstate or foreign commerce, or possess in or

17   affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has

18   been shipped or transported in interstate commerce."

19           11.     **Title 18, United States Code, Section 924(c)(1)(A) provides:**

20   "Except to the extent that a greater minimum sentence is otherwise provided by this subsection

21   or by any other provision of law, any person who, during and in relation to any crime of violence or drug

22   trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced

23   punishment if committed by the use of a deadly or dangerous weapon or device) for which the person

24   may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any

25   such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence

26   or drug trafficking crime be sentenced to a term of imprisonment of not less than 5 years."

27           12.     **Title 18, United States Code, Section 924(e)(1) provides:**

28   "In the case of a person who violates section 922(g) of this title and has three previous



1   convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug

2   offense, or both, committed on occasions different from one another, such person shall be fined under

3   this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the

4   court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to

5   the conviction under section 922(g)."

6        13.    **Title 21, United States Code, Section 841(a)(1)** provides:

7        "It shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or

8   dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

9        14.    **Title 21, United States Code, Section 846** provides:

10       "Any person who attempts or conspires to commit any offense...shall be subject to the

11  same penalties as those prescribed for the offense, the commission of which was the object of the

12  attempt or conspiracy."

13

14  **II.    PROBABLE CAUSE**

     **A. Evidence recovered from PETROV and MORAGA's room (hereafter ROOM)**

15       15.    On March 8, 2016, FBI agents, assisted by SFPD officers, executed a federal search

16  warrant issued in the United States District Court for the Northern District of California signed on

17  March 3, 2016 by Chief Magistrate Judge Joseph C. Spero, for 23 Teddy Avenue, San Francisco,

18  California, 94134 (attached to and incorporated as reference – Attachment A). The search warrant was

19  regarding a cyber crime investigation unrelated to PETROV and MORAGA, however, during the course

20  of the residence search, PETROV and MORAGA were found together naked in bed in the ROOM

21  where the drugs and a firearm were found. Interviews of other occupants in the residence and indicia

22  demonstrated that PETROV is the resident of the ROOM where he was located.

23       16.    Initially, in order for the house to be safely searched, PETROV, MORAGA and other

24  occupants of the house were detained, but not arrested. When asked if there were any firearms in the

25  house, MORAGA stated that she was aware of a firearm in a Louis Vuitton messenger bag in the

26  ROOM. During the search, the following evidence were recovered from the ROOM that PETROV and

27  MORAGA were found sleeping and were detained in:

28



a.      A firearm, a Ruger P90 (serial number 661-79063) manufactured in Southport, Connecticut, was found in a Louis Vuitton messenger bag hanging in plain view by the window. No other items were in the bag.

b.      Two cellular telephones belonging to PETROV were recovered. PETROV gave verbal consent and provided passwords to search his phones. One video on his phone, dated February 22, 2016, shows an unidentified female handling the aforementioned firearm. In the video, PETROV is telling the unidentified female to "take your finger off the trigger". PETROV is then heard telling an unidentified third party that "…this crazy fucking white girl who's in here is playing with my gun."

c.      On the phone are three pictures taken on March 1, 2016, of the Louis Vuitton messenger bag where the firearm was located. Two of those pictures show PETROV's Gucci backpack hanging directly above the Louis Vuitton messenger bag.

d.      Three bags of suspected methamphetamine were found in plain view on the coffee table. After seizure, SFPD conducted conclusive tests on each bag that yielded positive for methamphetamine. Total weight of all three bags was 125.5 grams.

e.      Two small bags of suspected heroin and methamphetamine were found inside a padded slipper hanging on a shelf. SFPD's conclusive testing yielded positive for 3.8 grams of heroin and presumptive testing yielded 5.8 grams of methamphetamine.

f.      A bag of suspected methamphetamine was found on the book shelf. SFPD's presumptive testing yielded positive for 14.0 grams of methamphetamine.

g.      A weigh scale was found on the book shelf.

h.      Six glass pipes, the type used to smoke methamphetamine, were found throughout the room. One was found in PETROV's Gucci backpack.

i.      Six pills of suspected oxycodone in an unlabeled pill bottle.

**B. Evidence that PETROV is the primary occupant of the ROOM at 23 Teddy Avenue**

17.      As of March 8, 2016, PETROV admitted to residing at 23 Teddy Avenue, San Francisco, California, 94134 for over a week, and said he was living in and out of the house for over two months. The following items belonging to PETROV were found in the ROOM:



1    a.    Framed and unframed photographs of PETROV were hanging on the wall.

2  Clothing found in the room such as a belt, were worn by PETROV and viewable in the photographs.

3    b.    PETROV's pants containing his wallet and $1,613.00 in cash.

4    c.    PETROV's car keys.

5    d.    Several videos show that PETROV occupies the ROOM, to include one of him

6  having sexual intercourse in the ROOM on February 19, 2016.  In another video, dated February 24,

7  2016, PETROV stated, "So I'm right here in front of my house", as he sat in his Camaro parked in front

8  of 23 Teddy Avenue.

9    e.    Indicia was found throughout the room with PETROV's name, such as mail, legal

10  documents, medical documents, and a prescription bottle. A receipt bearing PETROV's name and

11  address of 23 Teddy Avenue was also found in the ROOM.

12    f.    Two cellular phones belonging to PETROV on the coffee table.

13    g.    Online Tor Hidden Service website Atrium Market run by administrator

14  "petrovski" had an IP address linked to the residence.

15    h.    On March 18, 2016, PETROV's BMW was repossessed in front of 23 Teddy

16  Avenue.

17    i.    On March 20, 2016, SFPD conducted a traffic stop on PETROV in a Chevrolet

18  Camaro he admitted to owning. The camaro has been observed parked at 23 Teddy Avenue on several

19  occasions, most recently on March 29, 2016.

20  **C. Evidence that MORAGA was occupying the ROOM at 23 Teddy Avenue**

21    18.    MORAGA has admitted to residing at 23 Teddy Avenue, San Francisco, California,

22  94134 since February 2016. MORAGA stated that the following items belonged to her:

23    a.    A black backpack with personal items inside, found on the floor next to the bed.

24    b.    A green hooded sweater on the bed with a small bag of marijuana in one of the

25  pockets.

26    c.    One bag of methamphetamine on the coffee table.

27  **D. Conflicting statements made by PETROV and MORAGA**

28    19.    After authorities finished searching the ROOM, PETROV and MORAGA were

1  separated, Mirandized by Inspector Chan of the SFPD, and interviewed.

2          a.      MORAGA stated that she was room-sitting for "Alex" and had been there for

3  about three weeks. She said she did not know about the firearm in the ROOM.  However, that

4  contradicted her earlier statement that she was aware of a firearm in the Louis Vuitton bag in the ROOM

5  (see paragraph 15). She admitted that the marijuana found in her hooded sweater belonged to her. She

6  initially stated that all three bags of methamphetamine on the coffee table were hers, however, after

7  agents advised that she should not lie, she revised her statement and stated the "powdery" and "shittier"

8  bag of methamphetamine belonged to her, which she purchased for $350.00 at the corner of 16th and

9  Mission Streets, San Francisco. MORAGA said she did not know who the other two bags of higher

10  quality methamphetamine belonged to. She had smoked methamphetamine for three years, quit for a few

11  months, then started again recently. MORAGA said that the pipe found on the coffee table was hers. She

12  stated that she shared her bag of methamphetamine with everyone in the house. She did not know who

13  the other drugs found in the room belonged to. She said that the $1,500.00 in PETROV's wallet was

14  from her tax returns. She stated that she was dating PETROV and had put up the pictures of him on the

15  wall. Other than the black backpack and hooded sweater, no other clothing or indicia of MORAGA were

16  found in the ROOM.

17          b.      PETROV stated that the only items that belonged to him in the ROOM was the

18  Gucci backpack that included a pipe he admitted to owning, the bottle of pills, and $1,613 in his wallet

19  that he said was money he got from his mother. He said a black suitcase belonging to him might be in

20  the room. He claimed the ROOM and the items therein belonged to Anthony. He said he had never seen

21  the firearm found in the ROOM. He did not know where the drugs came from but that he did smoke

22  some of the methamphetamine on the coffee table.

23  III.    CONCLUSION

24          20.     Based upon the foregoing, I believe there is probable cause that PETROV violated Title

25  18, United States Code, Section 922(g)(1)(3) when:

26          a.      PETROV was convicted of five felonies and currently serving a 3 year probation.

27          b.      PETROV was found with a firearm and drugs in his room at his residence.

28          c.      PETROV and MORAGA are admitted methamphetamine users and had a firearm

in their possession.

21.     Based upon the foregoing, I believe there is probable cause that PETROV violated Title 18, United States Code, Section 924(c)(1)(A) when:

   a.     PETROV had a substantial amount of drugs in their possession for sale and distribution in close proximity to a loaded firearm. Based on my training, experience, as well as numerous discussions with various FBI agents and other members of law enforcement, I know that it is common for drug dealers to deal/possess weapons and exchange drugs for such weapons or goods, and weapons are commonly used by drug dealers as an item of investment and for protection from robberies by other drug dealers.  Narcotics traffickers keep weapons in their residences to protect themselves from robbery and to protect themselves from arrest by law enforcement officers.

22.     Based upon the foregoing, I believe there is probable cause that PETROV violated Title 18, United States Code, Section 924(e)(1) when:

   a.     PETROV has had three prior felony convictions for selling drugs.

23.     Based upon the foregoing, I believe there is probable cause that PETROV and MORAGA violated Title 21, United States Code, Sections 841(a)(1) and 846 when:

   a.     PETROV and MORAGA had a substantial amount of illegal narcotics in their possession.  The amount of methamphetamine is consistent with possession for sale and/or distribution, rather than for personal use.  Furthermore, MORAGA admitted to sharing methamphetamine with everyone at the residence.

24.     Based on the foregoing, I request that a Criminal Complaint issue for the PETROV and MORAGA listed in Part B of Section I of this Affidavit, based upon Probable Cause as described in Section II of this affidavit. In summary, as follows:

| Defendant | Offense | Penalty |
| --- | --- | --- |
| PETROV | 18 USC 922(g)(1)(3) | 10 years maximum imprisonment; $250,000.00 fine. |

| | | |
|---|---|---|
| PETROV | 18 USC 924(c)(1)(A) | 5 years mandatory minimum imprisonment |
| PETROV | 18 USC 924(e)(1) | 15 years mandatory minimum imprisonment |
| PETROV and MORAGA | 21 USC 841(a)(1) | 5 years mandatory minimum imprisonment |
| PETROV and MORAGA | 21 USC 846 | See related charges and penalties. |

Under penalty of perjury, I swear that the foregoing is true and correct to the best of my knowledge, information, and belief.


_____
Jenny Feng
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
this __1__ day of ~~March~~ April, 2016

_____
SALLIE KIM
United States Magistrate Judge